LELAND SPAULDING V. STATE OF NEBRASKA.

FILED FEBRUARY 6, 1901.   No. 11,452.

1. **Evidence:** VERDICT: JUDGMENT. Evidence examined, and found to be sufficient to support the verdict of the jury and the judgment rendered thereon.

2. **Cumulative Instructions.** Where an instruction is requested, the substance of which is contained in other instructions given, it is not error to refuse such requested instruction.

3. **Inapplicable Instructions.** An instruction requested, which is inapplicable to the issues in the case and not based on the evidence, is properly refused.

4. **Misconduct of Jury.** Where, in the trial of a criminal case, after submission to the jury, and while the jury was in charge of an officer, one of the jurors separated from the remainder while they went a short distance to eat one of their meals, and it appearing that no one communicated with the one juror during the absence of the others regarding the case, and that no improper influence could have been brought to bear upon him, the rights of the defendant are not prejudiced thereby, and a motion for a new trial because of such separation is not well founded.

5. **Relation of Attorney and Client:** CONFIDENTIAL COMMUNICATIONS: TESTIMONY OF ATTORNEY: CONSENT OF CLIENT. Where the relation of attorney and client exists, confidential communications between them, or statements made by the client to the attorney, are privileged, and the attorney will not be permitted to testify as to such statements without the consent of the client. Ruling by the trial court sustaining objection to an attorney testifying in the case as to statements made by the prosecutrix *held* proper.

6. **County Attorney:** DISQUALIFICATION: APPOINTMENT BY COURT. Where a county attorney is disqualified from prosecuting in a criminal case, the trial court may appoint other counsel to prosecute. Order of trial court, finding county attorney disqualified and appointing other counsel to prosecute, *held* not erroneous.

ERROR from the district court for Madison county. Tried below before CONES, J.   *Affirmed.*

*William M. Robertson* and *Powers & Hays,* for plaintiff in error:

The relation of attorney and client must exist, in order

23

to make a communication privileged. *Romberg v. Hughes,* 18 Nebr., 579; *Basye v. State,* 45 Nebr., 261.

The confidential relation of attorney and client does not exist as between the prosecuting officer for the state and a state witness. *Cole v. Andrews,* 74 Minn., 93.

In the interest of justice, any testimony in possession of the state which is beneficial to the prisoner should go to the jury. *Marks v. Beyfus,* 25 Q. B. Div. [Eng.], 494.

*Constantine J. Smyth, Attorney General, Willis D. Oldham, Deputy, Burt Mapes, Fred Free* and *Michael F. Harrington, contra.*

HOLCOMB, J.

A thorough consideration of the briefs of counsel, and an examination of the record in this case, convince us that the judgment of conviction rendered in the trial should be permitted to stand undisturbed. The defendant was convicted of the crime of rape. The prosecutrix was a female, nineteen years of age, who for about three years prior, had been accustomed to work for others at general housework as a domestic. For a while she was engaged in learning the business of dressmaking, but failed. It is disclosed that, while not feeble minded, as the term is ordinarily understood, she was perceptibly below the average person of her age and situation in intelligence and strength of mind. On the night of the alleged crime she attended an entertainment and dance given by the colored people of Norfolk in celebration of emancipation day. Several different persons were concerned in the alleged assault, some five or six altogether. One obtained her consent to accompany her home at the close of the entertainment. Others, including the defendant, were cognizant of this arrangement, and discussed the matter with a view to a possible disturbance and fight between the party who was to accompany the prosecutrix and one other of the number, all of whom seemed bent on violence in some form or

other. By one witness it is testified that the defendant, during the evening and before leaving the hall, declared, in substance, that they (meaning the party of whom he was one) would prevent the party referred to from accompanying the prosecutrix home, whether she wanted to go with them or not, and that he would have intercourse with her whether she wanted to or not. When the prosecutrix and her escort left the hall, about 2 o'clock in the morning, the defendant with others was standing at the foot of the stairs leading from the hall. Some remarks were made about others taking the girl home, and about a fight between the escort and one other of the crowd. One of the party took hold of the girl's disengaged arm and, with the others a short distance in the rear, started towards the place where she was staying. At the railroad crossing the intruding party released his hold and returned to his companions a short distance behind. The defendant then left the party and seized the girl's arm, with the suggestion that they get away from the crowd, and she, still accompanied by her escort, traveled with them rapidly along the track of the railroad, leaving the street and going along and by several coal-houses and other buildings usually erected along side tracks, until they were near some stock-yards and empty cars standing on the track, where, as claimed by the prosecutrix, she was thrown violently to the ground, and, although offering all the resistance she was capable of, was, by the violence employed by the defendant and others, rendered unconscious and assaulted by the defendant and some five others. The manner of committing the offense was brutal and bestial, with not the trace of an extenuating circumstance. It is contended, and with some degree of plausibility, that the elements of force, resistance and non-consent are not established by the evidence sufficiently to support the verdict of guilty of the crime of rape. As to physical resistance, the evidence is not as strong and conclusive as would usually be expected un-

der similar circumstances. Just what terrorizing effect the unmanly and violent conduct of those connected with the affair had can not be known. The conduct of the parties to the assault at and after the entertainment was certainly enough to frighten a person of the age of the prosecutrix of more than ordinary courage. The suggestion of the defendant, that they get away from the crowd which was following them, very probably led her to the belief that he would assist her in escaping from them, and she readily and voluntarily accompanied him. The circumstances were unusual, and might well have overpowered a person of stronger mind than hers. There was evidence from which the inference could justly be drawn that she did resist to the full extent of her ability. There was evidence of a struggle; of her undergarments being torn; her hair disheveled and her clothes disarranged, and that she struck the defendant, leaving a mark visible for some time thereafter, which he admitted receiving by a blow from her. She testified that she became unconscious, and there is testimony by a third party who is disinterested, to the effect that after the several assaults had been made, she was crying, or, as he termed it, 'sniffling,' was bewildered and almost unconscious, and confused as to her location and the direction of her home. Her testimony was corroborated in many respects by circumstances, all tending to support the charge in the information. It can not be said, as we view the record, that the evidence is insufficient to support a finding in favor of every essential element and material allegation of the crime charged. The verdict is supported by sufficient competent evidence.

Complaint is made as to several instructions requested by the defendant and refused by the trial court. Of the instructions given to the jury were some twenty given by the court on its own motion, and four at the request of the defendant. The fact that no complaint is urged in the brief of counsel as to the instructions given by the court on its own motion is well calculated to raise the

presumption that the charge as a whole was as favorable to the defendant as he could rightfully ask. This presumption is strengthened by the fact that an instruction given by the court on its own motion, to which a formal exception was taken, and one given at the request of the defendant are exact duplicates. The instructions as a whole covered every salient feature of the case, and were fully as favorable to the defendant as he could, in any view of the case, reasonably request.

It is urged that two instructions upon the prior chastity of the prosecutrix as affecting the question of consent were erroneously refused. An examination of the record, however, discloses that in the third instruction given at the request of the defendant the jury's attention was especially called to the subject, and they were invited to a consideration of the evidence on this phase of the case for the purpose of determining the question of whether the prosecutrix consented to have intercourse with the defendant at the time of the alleged assault. The instructions requested and refused but stated the proposition in a different form, and to have given them would have been only a repetition, and they were, therefore, properly refused.

Complaint is also made because of the refusal of the trial court to give three other instructions touching the question of the use of force and the want of consent as necessary elements to constitute the crime charged. These same questions were covered by other instructions given by the court on its own motion, as well as one given at the request of the defendant, and no error was committed in the refusal to give those requested, of which complaint is made.

Instructions were also requested on the theory that unless the prosecutrix was *non compos mentis*, she was capable of consenting, if the jury found she did consent, and the crime of rape could not, therefore, be established. There was no such issue in the case or before the jury, and the instructions were inapplicable and not based on

any evidence. The state of the prosecutrix's mind was shown, as any other fact, for the purpose of aiding the jury in the determination of the question of whether she resisted to the extent of her ability and as an explanation of her after conduct. The jury were fully instructed on the question of consent, and that, if given, however tardily, the defendant could not be found guilty, no matter how much force he might have used prior to such consent. There was no issue in the case as to the incapacity of the prosecutrix to give consent, and the instructions were properly refused.

All the instructions requested and refused were quite fully, and sometimes by repetition, covered in the instructions already given. We find no error in the refusal to give any of the instructions requested.

Misconduct of the jury is also alleged, based upon the fact that during the deliberation of the jury, one, who was ill, was permitted to stay at the home of the sheriff, while the others went some little distance for the purpose of eating one of their meals. It is quite evident from the showing made that no one communicated with the one juror during the absence of the others, and by no possibility could any improper influence have been brought to bear upon him. There was no prejudice to any of the rights of the defendant from the acts complained of, and the ruling of the trial court on the objection was eminently proper.

The evidence of one W. E. Reed, an attorney at law, as to statements alleged to have been made by the prosecutrix, was sought to be elicited by the defendant. Objection was made because, at the time of the alleged statements, the relation of attorney and client existed, and the statements were, therefore, privileged communications. It is shown by the record that the relation claimed did exist; that the father of the prosecutrix, accompanied by her and her uncle, went to the office of Mr. Reed, paid him a fee and consulted him regarding the case, and that at this time the prosecutrix made the

statements sought to be elicited.  That they were con-
fidential and privileged we entertain no doubt, and fully
approve the ruling of the trial court thereon.  The case
comes clearly within the rule as announced in *Romberg
v. Hughes*, 18 Nebr., 579, and in *Basye v. State*, 45 Nebr.,
261.  In the latter case a discussion of the rule is found,
and further comment is not necessary in this case.

The court found that the county attorney was dis-
qualified from acting in the case and appointed other
practicing attorneys to prosecute.  This action is made
the basis of a claim of error.  The order was entered af-
ter an investigation of the matter, and the evidence upon
which the court acted, not being preserved in the record,
will therefore be presumed to have been sufficient.  From
the record presented we can think of no other proper ac-
tion on the part of the court than to appoint some one to
prosecute.  The county attorney had refused to prosecute,
and the filing of the information was had only under the
direction of the court.  From the reasons assigned for not
wishing to prosecute, which are preserved in the record,
the trial court was justified in concluding that the county
attorney had disqualified himself from efficiently repre-
senting the state in the prosecution of the case, and the
appointment of some other counsel appears for that pur-
pose to be entirely proper and authorized by section 21,
chapter 7, Compiled Statutes, 1899.

Finding no error in the record, and holding, as we do,
the evidence sufficient to justify the verdict and sustain
the judgment of the trial court, the same must be al-
lowed to stand.

AFFIRMED.

NOTE.— *Separation of Jurors.*—Under the ancient law of England,
jurors were held as prisoners of the court till they agreed upon a
verdict.  *Bishop of Northumberland v. Earl of Kent*, Trinity Term (Eng.),
14 Henry VII., c. 29.  The rule is now relaxed.  Separation in trial of
felony held no ground for reversal in *Bilansky v. State*, 3 Minn., 313.
—REPORTER.